## Shields *et al. v.* Graves, Executor &c.

On a motion to quash a forthcoming bond, the bond is not a part of the record, unless made so by a bill of exceptions; but when the error complained of appears by the motion, and the judgment of the court in disposing of the motion, the judgment will be reversed.

It is sufficient if the sheriff return on the execution that the forthcoming bond taken thereon has been forfeited.

It is error to quash a forthcoming bond because it has not been returned forfeited, when it does not appear by the record that there has been an actual forfeiture.

A bond can only be quashed for some inherent defect. The return of the officer constitutes no part of the bond; and a defective return, or the want of any return, will not justify the quashing of a good bond; although it might afford a ground for quashing an execution purporting to have emanated from such bond.

The defendant in error obtained judgment in the circuit court of the county of Rankin, against John Shields, W. H. Shelton and Samuel M. Puckett, as joint drawers of a promissory note for sixteen hundred and eighty-eight dollars. On this judgment an execution issued, and was levied upon the property of Shields, who executed a forthcoming bond, with J. J. H. Morris and Dan'l Fore as his sureties. Puckett and Shelton did not join in the bond. Subsequently an execution emanated from said bond, as from a forfeited forthcoming bond, the time for the delivery of the property recited in the bond having elapsed. At the April term of said court, 1839, the bond, on motion of the obligors therein, was quashed, to which judgment Shelton and Puckett sued out a writ of error. No bill of exceptions was filed in the case. The motion and judgment of the court thereon was as follows:

"Motion in this case by the defendants' counsel to quash the forthcoming bond and execution thereon, for the following reasons, viz:

"First. The condition of the said bond does not provide that said bond shall be void if the amount of the execution be paid.

Shields *et al. v.* Graves, Executor &c.

"Second. The amount of the execution is misrecited.

"Third. There is no return upon the bond to authorize the conclusion in law that it was forfeited, or to authorize the second execution.

"Fourth. The bond is not in penalty equal to double the amount of the execution."

Other grounds were stated. The judgment of the court was as follows:

"It is considered that said bond be quashed, upon the ground that it does not appear, by the return of the sheriff on the bond, that the same" was forfeited.

The following errors were assigned:

First. The court erred in quashing the forthcoming bond given in this cause.

Second. The court erred in entertaining the motion to quash the bond after the return term.

Third. The court erred in quashing the bond and execution, without notice having been given to plaintiffs in error.

Fourth. The court erred in quashing the execution which issued on the forfeited forthcoming bond.

Rucks & Yerger for plaintiffs in error.

J. Holt contra.

It is well settled that no person can bring a writ of error unless he is a *party* or privy to the record, or is prejudiced by the judgment; the rule upon the subject being, that a writ of error can only be brought by him who would have had the thing if the erroneous judgment had not been given. 2 Saunders' Rep. 46, a, note 6.

The forfeiture of the forthcoming bond having created a new judgment against the obligors therein, in favor of the plaintiff in the execution, a motion to quash that bond or set that judgment aside, was a proceeding to which it will be conceded Puckett and Shelton were neither parties nor privies. It is contended, however, that they were *aggrieved* by the judgment of the court, and have therefore a right to insist upon its reversal by this tribunal.

It is admitted that one of the *consequences* of quashing the bond was a revival of the original judgment against Puckett and Shelton, which the forfeiture of that bond had extinguished. But, while a forfeiture of the forthcoming bond extinguished the judgment against Puckett and Shelton, it did not extinguish their liability for the debt. If paid by their co-promissor, John Shields, under the new judgment upon the bond, they were still liable over *to him.* The revival, therefore, of the original judgment, which is the *consequence* complained of by plaintiffs in error, did not in fact prejudice them; it varied the *evidence* of their responsibility, but not *its extent.* This certainly is not that *distinct and immediate injury* spoken of by the law, which will enable a party to prosecute a writ of error.

If, however, the forfeiture of the forthcoming bond had extinguished, not merely the original judgment, but all liability, present and remote, on the part of plaintiffs in error, for the debt, still, it is believed, they had but a *contingent and collateral* interest in the proceedings of the court now under review, and cannot, upon well established principles, be heard to question them. The party prosecuting a writ of error must *appear by the record* to be aggrieved. Where the judgment complained of is rendered in an action at law, and a supersedeas is awarded to a person against whom no judgment was in fact obtained, such supersedeas will be quashed. Moss &c. *v.* Moss, administrator, 4 H. & Mun. 314.

Did the order of the court quashing the bond contain any judgment against Puckett and Shelton? It must be admitted that it did not. The case of Halcombe *v.* Purnell &c., decided by the court of appeals of Virginia, in 1802, is strikingly analogous to that at bar. The court then held that a principal obligor in a forthcoming bond, against whom the judgment in the original suit was rendered, but against whom no judgment was rendered on the forthcoming bond, was not entitled to appeal from a judgment against the surety in the forthcoming bond; yet upon the face of the record it must have appeared that the principal obligor was *collaterally* interested, since the surety would be entitled to recover of him the amount of the judgment whenever the surety should discharge the same; but as he was no party to the judg-

ment complained of, and as his interest was collateral, not immediate, the court dismissed the appeal. This case will be found commented upon by Judge Tucker, in 1 H. & M. 406.

In Wingfield *v.* Crenshaw, 3 H. & M. 245, it was held that, although a person may be interested, unless the record shows that he was a party to the proceedings in the court below, he cannot obtain a supersedeas. The interest of the plaintiff in error in that case, was very similar to that of the plaintiff here. It was an interest demonstrable, but it was *collateral* and consequential, and therefore not sufficient to authorize the maintenance of a writ of error, on behalf of one not connected in name with the record. If any decisions can be found conflicting with those cited, they have escaped my researches. The case of Flournoy *v.* Smith et al. 3 How. 62, is rather an authority against plaintiff in error. The circuit court of Madison county, on motion, set aside a sale of a tract of land which had been made by the sheriff under execution. The purchaser under that sale prosecuted a writ of error to reverse the judgment of the court, vacating his purchase, and it was decided that it was competent for him to maintain the writ. In reading this opinion, our only surprise is, that the right of the purchaser to prosecute his writ should ever have been questioned, since his interest was *directly affected* by the judgment of the court. That judgment, in terms and *proprio vigore*, divested him of the title which he had acquired under the sale. If, in such case, he could not prosecute a writ of error, who could do so?

If all whose interests are affected by a judgment can maintain a writ of error, where shall the limit to this right be fixed, and where shall litigations terminate? Suppose this case: A obtains a judgment against B on the first day of the term; C obtains a judgment against him on the second day: each of these judgments is sufficient to swallow up his entire estate; the judgment in favor of A is irregular, and might be set aside upon motion—yet B acquiesces in it: will it be contended that C could move to set it aside for the purpose of removing a lien having precedence of his? Or if B should make the motion, and it should be overruled, will it be insisted that C could prosecute a writ of error, to reverse the judgment of the court overruling the motion? Yet his interest would be as manifest as that of plaintiff in error.

23*

Again: Suppose a judgment is rendered against A, sufficient in amount to absorb his whole fortune; yet this judgment is erroneous, and might be reversed. A, however, is passive, and will not move in the matter. There are a hundred other creditors of his, all interested in reversing the judgment, and thereby providing a fund for the payment of their claims. Can it be successfully contended that they could prosecute a writ of error to reverse the judgment? If so, must they all join in the writ, and would it be quashable if any of the creditors were omitted? or might they prosecute it consecutively and in detail? The cases supposed are certainly analogous to that at bar.

If Puckett and Shelton can prosecute this writ, can they do so alone? Are there not others aggrieved by the judgment complained of, who should be joined? Ought not the writ to be prosecuted rather against Shields and the sureties in the bond quashed, than against defendant in error, who resisted the quashing below, as much as Puckett and Shelton can do here?

Opinion of the court by Chief Justice SHARKEY.

A motion was made in the circuit court to quash a forthcoming bond, which was sustained; to reverse which error is brought, but the bond is not placed on the record by bill of exceptions, and still it is insisted that it constitutes properly a part of the record, and that the court may notice it as such. We incline to adhere to the decision of this court in the case of Grigsby *v.* Francis, 2 Howard, 845, in which it was held, that, on motion to quash a forthcoming bond and fieri facias, they must be placed upon the record by bill of exceptions, otherwise they will not be regarded as constituting a part of the record.

But this question is immaterial in the present case. We always regard the judgments of the circuit courts as correct, unless the error be shown; and it devolves upon the plaintiff in error to put his finger upon the error in the proceedings; but when the judgment contains on its face an apparent error, he need go no further than point to that. This judgment does exhibit such an error. We have the record of the motion and the reasons on which it was founded; we have the judgment sustaining the motion, which, on its face, states a fact as the reason for sustaining the motion.

The court ordered and adjudged that the bond should be quashed "upon the ground that it does not appear by the return of the sheriff on the bond that the same was forfeited." This was erroneous, for three reasons:

First. It is sufficient if the sheriff return on the execution that the bond was forfeited; it is not required that the return should be indorsed on the bond, and, for aught that appears, such return may have been made.

Second. There is no law that requires a party to forfeit his bond; for any thing that appears, the condition may have been literally performed by a delivery of the property, and still it is quashed, because it was not returned forfeited, when there is nothing to show that it was forfeited.

Lastly. A bond can only be quashed for some inherent defect. The return constitutes no part of the bond; and a defective return of the sheriff, or no return at all, will not justify the quashing of a good bond. It might afford a reason for quashing the execution, which purports to emanate on a forfeited bond. The bond may be perfectly good, although the sheriff may make a bad return, or may fail to make any return. The bond is the act of the defendant, the return the act of the sheriff, and they are not dependent on one another.

The judgment must be reversed.